## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| C-MART, INC., a Missouri corporation, individually and as the representative of a class of similarly situated persons, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | No. 13-cv-80561-DMM |
| v. | ) ) | |
| | ) | Hon. Donald M. Middlebrooks |
| METROPOLITAN LIFE INSURANCE COMPANY, THE STORICK GROUP CORPORATION, THE STORICK GROUP CO., SCOTT R. STORICK and JOHN DOES 1-10, | ) ) ) ) ) ) | Mag. Judge Dave Lee Brannon |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

Plaintiff, C-Mart, Inc., individually and on behalf of all others similarly situated, hereby moves the Court for class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) and states the following in support:

1. This case arises out of a fax-advertising campaign conducted between August 7 and September 6, 2012, when an identical advertisement was sent by fax to 35,690 Missouri residents during that 30-day period.

2. Plaintiff, C-Mart, Inc., a convenience store in Park Hills, Missouri, received one of those faxes on September 4, 2012, and brought this lawsuit alleging that the faxes violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227.

3. Each of the identical 35,690 faxes advertised life insurance. Defendant Metropolitan Life Insurance Company ("MetLife") sells life insurance and, through its office in Fort Lauderdale, Florida, employed Scott R. Storick, the Storick Group Corporation, and the Storick Group Co. ("Storick Defendants") to assist in selling life insurance.

4.      MetLife and the Storick Defendants are collectively referred to herein as "Defendants," treating them equally for purposes of this motion. This motion is not brought to determine or apportion liability. Rather, it is brought to establish that this case, including issue of liability can be determined on a classwide basis. Issues raised by any Defendant as to any other Defendant's liability (*e.g.*, agency, joint and several liability, or indemnification) are common questions that will affect the class as a whole; those issues will not vary class member by class member.

5.      Therefore, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff seeks certification of the following class:

> All persons in Missouri who (1) during the period of August 7, 2012, through September 6, 2012, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, (4) with whom Defendants did not have an established business relationship, and (5) which did not display a proper opt-out notice.

6.      Alternatively, the Court could also define the class as follows:

> All persons in Missouri who were sent a facsimile during the period of August 7, 2012, through September 6, 2012, stating, "LOW COST LIFE INSURANCE RATES!," "FOR A FREE QUOTE PLEASE FAX THIS FORM TO: (713) 554-9683," and "To unsubscribe, please FAX your request to Our PAPERLESS Fax Computer: 206-350-3403."

> or

> All persons in area codes 314, 417, 573, 636, 660, and 816 who were sent a facsimile during the period of August 7, 2012, through September 6, 2012, stating, "LOW COST LIFE INSURANCE RATES!," "FOR A FREE QUOTE PLEASE FAX THIS FORM TO: (713) 554-9683," and "To unsubscribe, please FAX your request to Our PAPERLESS Fax Computer: 206-350-3403."

7.      Because these alternative class definitions are basically synonymous, Plaintiff will simply refer to them as the "Class."

2

8.    As explained in Plaintiff's incorporated memorandum of law, the Class easily meets the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as the predominance and superiority requirements of Rule 23(b)(3). Plaintiff also submits that its counsel, the law firm of Anderson + Wanca is highly experienced in TCPA class-action litigation and should be appointed Class counsel under Rule 23(g).

## MEMORANDUM OF LAW

TCPA cases arising from fax advertising are ideally suited for class adjudication.

> Class certification is normal in litigation under § 227 [the TCPA], because the main questions, such as whether a given fax is an advertisement, are common to all recipients.

*Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 683 (7th Cir. 2013). These cases tend to involve identical statutory violations arising from a single decision to send thousands of identical faxes, with each fax giving rise to a claim for statutory damages too small to justify an individual lawsuit. This case is no exception. As argued below, the requirements of Rule 23(a) and 23(b)(3) are easily satisfied under the facts of this case.

## I.    The Faxes at Issue

Selling insurance is about the "law of numbers," requiring many thousands of reach-outs into the marketplace to generate a few potential leads. (Storick Dep. Tr. at 210).[1] The greater the number of reach-outs, *i.e.* the more marketing that is done, the greater the number of potential leads generated. (*Id.*). The marketing at issue in this case consisted of fax advertising to generate leads to

---

[1] Copies of the following are attached to the Appendix of Exhibits: Second Expert Report of Robert Biggerstaff ("Biggerstaff Second Report"), Exhibit 1; Declaration of Robert Biggerstaff ("Biggerstaff Decl."), Exhibit 2; Deposition of Scott Storick, ("Storick Dep. Tr."), Exhibit 3; Deposition of Alma Dominguez ("Dominguez Dep. Tr."), Exhibit 4; Opinion in *A Aventura Chiropractic v. Med Waste Mgmt., LLC*, No. 12-21695-CIV, 2013 WL 3463489 (S.D. Fla. July 3, 2013), Exhibit 5; Resumes of Proposed Class Counsel, Exhibit 6.

sell life insurance policies. (Storick Dep. Tr. at 61, 63, 78; Dominguez Dep. Tr. at 62). The faxing

was done systematically and repetitively, designed to generate the most leads possible, at high-

volume in an assembly-line, cookie-cutter fashion.

On September 4, 2012, Plaintiff received the following fax advertisement:



(Compl., Doc. 1, Ex. A). (Although Defendants' names do not appear on the fax, this fax was one

of thousands sent in order to drum up leads for the sale of MetLife insurance products.) (Storick

Dep. Tr. at 61, 63, 78; Dominguez Dep. Tr. at 62 (agreeing that the purpose of the faxes "was to sell

MetLife products")).

The mechanical act of transmitting the faxes was not done by Defendants. The faxes were transmitted by a third party, Robert Martino, hired by Scott Storick, the highest producing agent at the MetLife office in Fort Lauderdale, Florida, to send the faxes. (Storick Dep. Tr. at 37, 43). Storick was not only the highest producing agent in the Fort Lauderdale office, he was one of the top five life-insurance sales agents for MetLife nationwide. (*Id.* at 121–22). Storick sold on average between 30 to 50 MetLife insurance policies per year between 2010 and 2012 using the leads generated by fax advertising. (*Id.* at 129). This was a large percentage of the approximately 200 life insurance policies Storick sold annually on average. The faxes were sent by the thousands to a list of fax numbers compiled by Martino. (*Id.* at 133).

During discovery, Plaintiff obtained a computer hard drive containing the transmission records of the faxes at issue and call-detail records from Megapath, the telephone service provider used to transmit the large volume of faxes. (Ex. 1, Second Expert Report of Robert Biggerstaff, "Biggerstaff Second Report" ¶ 11). Plaintiff's expert witness, Robert Biggerstaff, reviewed these materials. (*Id.*). Biggerstaff is a certified computer forensic examiner and member of the International Society of Forensic Compute Examiners, with over 25 years of experience in forensic computer examinations and data recovery. (*Id.* ¶ 9). Biggerstaff has served as an expert in hundreds of cases, including many TCPA cases. (*Id.*).

Biggerstaff examined the fax-transmission records on the hard drive dated between August 7, 2012, and September 6, 2012 (*id.* ¶ 19), as well as the call-detail records from Megapath during the same timeframe (*id.* ¶ 23). Biggerstaff was able to compare the transmission records to the call-details records by date, time, and fax number and matched them to a 99.998% degree of certainty. (*Id.* ¶ 24). Further, Biggerstaff was able to isolate the fax transmissions made specifically to numbers in Missouri area codes. (Ex. 2, Declaration of Robert Biggerstaff ("Biggerstaff Decl.") ¶¶ 7–9).

Biggerstaff identified 35,690 successful fax transmissions, each to a unique fax number with a Missouri area code, between August 7, 2012, and September 6, 2012. (Biggerstaff Decl. ¶¶ 7–9).

The data Biggerstaff collected show the transmission of the faxes to Missouri area codes was as follows:

| Date | Number of Missouri faxes |
|---|---|
| 8/7/2012 | 607 |
| 8/8/2012 | 1879 |
| 8/9/2012 | 1788 |
| 8/10/2012 | 1723 |
| 8/11/2012 | 1054 |
| 8/12/2012 | 830 |
| 8/13/2012 | 1813 |
| 8/14/2012 | 1949 |
| 8/15/2012 | 1541 |
| 8/16/2012 | 1248 |
| 8/18/2012 | 313 |
| 8/19/2012 | 1892 |
| 8/20/2012 | 1580 |
| 8/21/2012 | 89 |
| 8/23/2012 | 216 |
| 8/24/2012 | 1912 |
| 8/25/2012 | 1096 |
| 8/26/2012 | 426 |
| 8/27/2012 | 1491 |
| 8/28/2012 | 1936 |
| 8/29/2012 | 1960 |
| 8/30/2012 | 674 |
| 9/1/2012 | 337 |
| 9/2/2012 | 655 |
| 9/3/2012 | 1848 |
| 9/4/2012 | 1915 |
| 9/5/2012 | 1743 |
| 9/6/2012 | 1175 |
| TOTAL | 35,690 |

(Biggerstaff Decl., Ex. 3).

Biggerstaff concluded that the 35,960 faxes were identical, consisting of the same computer image file entitled, "Life_insurance_rates_FL_2012.pdf," a copy of which is attached to his report as

Exhibit 2. (Biggerstaff Second Report ¶ 19). That image is identical to the fax sent to Plaintiff on

September 4, 2012. (*Compare* Biggerstaff Second Report, Ex. 2 *with* Compl., Ex. A). The fax sent to

each member of the class and the fax sent to

Plaintiff as seen side-by-side:



Each fax contains identical language in

the footer: "To unsubscribe, please <u>FAX</u> your request to Our <u>PAPERLESS</u> Fax Computer: 206-

350-3403." (Biggerstaff Second Report, Ex. 2). Notably, this "opt-out" language did not (1) state

that a sender's failure to comply with an opt-out request within 30 days is unlawful or (2) provide

both a telephone and fax number for such requests or provide a cost-free mechanism to transmit

the request. (*Id.*).

## II.     The TCPA and its Opt-Out Requirement.

The TCPA generally forbids the use of "any telephone facsimile machine, computer, or

other device to send, to a telephone facsimile machine, an unsolicited advertisement," 47 U.S.C. §

227(b)(1)(C), and provides for statutory damages of $500 for each violation, which the Court may

treble to $1,500 if a sender's violation was "willful" or "knowing." 47 U.S.C. § 227(b)(3)(A)-(B). FCC regulations promulgated under the TCPA define a "sender" as a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(8).

There is only one statutory exception to TCPA liability. The exception has three elements:

> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;
>
> (ii) the sender obtained the number of the telephone facsimile machine through--
>
>> (I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or
>>
>> (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,
>>
>> except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and
>
> (iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D).

47 U.S.C. § 227(b)(1)(C). In sum, the statute requires three things for a valid defense to a TCPA claim: (1) the sender has an "established business relationship" ("EBR") with the recipient; (2) the sender obtained the recipient's fax number either through a voluntary communication between the two or through a public source on which the recipient voluntarily made the number available; and (3) the fax has an opt-out notice meeting the requirements of the statute.

The opt-out-notice requirement is contained in 47 U.S.C. § 227(b)(2)(D), which directs the FCC to "prescribe regulations to implement" the requirement. The corresponding FCC regulation requires that an opt-out notice must:

(1) Be clear and conspicuous and on the first page of the advertisement;

(2) State that the recipient may make a request to the sender not to send any future unsolicited advertisements and that failure to comply within 30 days is unlawful;

(3) Set forth the requirements for a request under 47 U.S.C. § 227(b)(2)(E);[2]

(4) Include a domestic contact telephone and facsimile number for the recipient, and a cost-free mechanism for a recipient to transmit a request; and

(5) Permit the recipient to make such a request at any time on any day of the week.

47 C.F.R. § 64.1200(a)(4)(iii).

The text of the regulation states, "[a] facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section." 47 C.F.R. § 64.1200(a)(4)(iv). The FCC has reiterated that the regulation means what it says: the opt-out notice is required for all fax advertisements, even if there is an EBR or the sender has obtained prior consent. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, 71 Fed. Reg. 25967-01, 25972, 2006 WL 1151584 (May 3, 2006) ("In addition, entities that send facsimile advertisements to consumers from whom they obtained permission must include on the advertisements their opt-out notice and contact information to allow consumers to stop unwanted faxes in the future.").

---

[2] 47 U.S.C. § 227(b)(2)(E) states that a request not to send future unsolicited advertisements will be binding only if (1) it identifies the telephone number or numbers of the telephone facsimile machine to which the request relates; (2) the request is made to the telephone or facsimile number of the sender; and (3) the person making the request has not "subsequent to such request" provided express invitation or permission to the sender.

The courts have deferred to the FCC on the subject, holding that if a fax does not strictly comply with the required opt-out language, the defendant cannot raise an EBR or consent defense. *See, e.g., Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682, 683 (7th Cir. 2013) ("Turza's faxes did not contain opt-out information, so if they are properly understood as advertising then they violate the Act whether or not the recipients were among Turza's clients."); *Nack v. Walburg,* 715 F.3d 680, 685 (8th Cir. May 21, 2013) (EBR and consent are not a defense where faxes contained improper opt-out language); *Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F. Supp. 2d 272, 285–87 (S.D.N.Y. 2013) (same); *Vandervort v. Balboa Capital Corp.,* 287 F.R.D. 554 (C.D. Cal. 2012) (same).

## II.   **ARGUMENT**

The Rule 23(a) requirements—numerosity, commonality, typicality, and adequacy—are easily met here. The Rule 23(b)(3) requirements of "predominance" and "superiority" are also satisfied. The common legal issues (such as whether the faxes are "advertisements" under the TCPA) "predominate," and there will be no class-member-specific issues for the Court to decide at trial. A class action is clearly "superior" because it would make no economic sense to bring an individual lawsuit for $500 to $1,500 in statutory damages. For these reasons, as argued below, the Court should grant class certification.

### A.   **The Rule 23(a) Requirements are Satisfied.**

Rule 23(a) contains four prerequisites for class certification: (1) that the proposed class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims of the representative party are typical of the claims of the class; and (4) that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are easily satisfied here.

### 1.   **Numerosity**

Numerosity exists where "the class is so numerous that joinder of all members [of the class] is impracticable." Fed. R. Civ. P. 23 (a)(1). There is no exact number a plaintiff must present to satisfy numerosity. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003). The Eleventh Circuit has held that "less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986) (quoting 3B Moore's Federal Practice ¶ 23.05(1) n.7 (1978)).

In this case, Defendants sent one fax 35,690 times to 35,690 unique fax numbers in Missouri. (Biggerstaff Decl. ¶ 8). It is incontrovertible that Rule 23(a)(1)'s numerosity requirement is satisfied.

### 2.    Commonality

To satisfy the commonality requirement, a movant must show that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). There need only be "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). This rule does not require that the claims of class members be identical. *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982) (citing *Johnson v. Am. Credit Co.*, 581 F.2d 526, 532 (5th Cir. 1978)). Nor does it require that the common questions "predominate" over individual issues, as required under Rule 23(b)(3). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009). It merely requires "one issue" of fact or law that can be decided classwide. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). Commonality is generally satisfied when a plaintiff alleges that a defendant has engaged in a course of conduct that is standardized across the class and affects all class members. *Id.*

Here, Defendants engaged in standardized conduct involving a common nucleus of operative facts by faxing the same advertisement to Plaintiff and the rest of the class. The

computerized transmission records of the faxes sent were produced during discovery, and they are corroborated to a 99.998% degree of certainty by the call detail records from the telephone provider. (*See* Biggerstaff Second Report ¶¶ 19, 24). Each class member was treated exactly the same, having been sent the same fax advertisement, giving rise to common factual issues, such as the content of the faxes, how many were sent, and when they were sent.

The common legal questions presented under the TCPA include the following:

(1)    Whether Defendants' fax constituted an "advertisement";

(2)    Whether Defendants' fax advertisement contained a proper opt-out notice;

(3)    Whether Defendants meet the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(8);

(4)    Whether Defendants are jointly and severally liable to the class;

(5)    Whether Plaintiff and other class members are entitled to statutory damages; and

(6)    Whether Defendants' acts were "willful" or "knowing" under the TCPA and if so whether the Court should treble the statutory damages.

Any one of these issues can be resolved as to the entire class. Therefore, the "commonality" requirement of Rule 23 is satisfied.

### 3.    Typicality

To satisfy Rule 23(a)(3)'s typicality requirement, a plaintiff must possess the same interest and have suffered the same injury as the other class members. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Typicality can be satisfied even if substantial factual differences exist between the plaintiff and the other class members if there is a "strong similarity of legal theories." *Id.* Typicality is present if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

Typicality is satisfied in this case because each of the class members was subjected to the same conduct, *i.e.*, Defendants' fax-advertising campaign. Plaintiff and each member of the class received the same fax advertisement and each class member's claim is based on the same legal theory as Plaintiff's.

### 4.      Adequacy of Representation

#### a)      Rule 23(a)(4)'s Adequacy Requirement

Rule 23(a)'s final requirement is that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis involves two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (quoting *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460–61 (N.D. Ala. 2003)).

Plaintiff understands its obligations and the nature of the claims in this case, Plaintiff is involved in the litigation, and Plaintiff is interested in representing the class and enforcing the TCPA. Plaintiff and other class members seek statutory damages under the TCPA. There is no potential for a conflict of interest between Plaintiff and other class members given the similarity of the claims in this case. Therefore, Rule 23(a)(4)'s adequacy requirement is satisfied.

#### b)      Rule 23(g)'s Adequacy of Class Counsel Requirement

In determining whether counsel are qualified, Rule 23(g) lists four factors for the Court to consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Here, Plaintiff's counsel are experienced lawyers who are clearly qualified to act as counsel for the class. Resumes for Plaintiff's counsel are attached as Exhibit 6. They have been appointed as lead or co-lead counsel in many contested class actions and have recovered substantial monies for their clients and the class members. They have been litigating TCPA claims for many years and have negotiated class-wide settlements in many cases. Plaintiff's counsels have allocated and will continue to commit adequate resources, both staffing and monetary, to ensure that the class is properly represented in this case.

**B.      The Rule 23(b)(3) Requirements are Satisfied.**

To certify a class, a plaintiff must also satisfy one of the subsections of Rule 23(b). *Cheney*, 213 F.R.D. at 489. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

**1.      Predominance**

In determining whether common questions predominate, courts "generally focus on whether there are common liability issues which may be resolved efficiently on a class wide basis." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 606 (S.D. Fla. 2003). In this case, common factual issues predominate because the class claims focus on Defendants' fax-advertising campaign, including the preparation of a form advertisement regarding Defendants' insurance products and the sending of that advertisement by fax to a third-party target list. Many of these factual questions will be answered by Mr. Biggerstaff, including (1) the number of faxes sent, (2) the phone numbers to which they were sent, (3) the dates and times on which they were sent, and (4) that the faxes were identical copies of "Life_insurance_rates_FL_2012.pdf," the file found on the hard drive that

matches the fax sent to Plaintiff. (Biggerstaff Second Report ¶ 19). There are no relevant individualized factual questions that would vary class member by class member.

Common legal issues predominate because the class members' claims arise under a single federal statute. Those questions—e.g., whether the faxes meet the definition of an "advertisement," whether MetLife meets the definition of a "sender," and whether the opt-out language was deficient—are common to the entire class. Again, since each class member was sent the same fax, there are no individualized questions that would vary class member by class member.

As argued below, Defendants' agency-related defenses (such as whether the Storick Defendants sent the faxes without MetLife's authorization) can only be decided classwide; there is nothing individualized about them. Defendants' claims that some class members may have had an EBR with MetLife or that they may have "consented" to receiving faxes fail to defeat predominance because (1) the faxes do not contain the required opt-out language, making those defenses unavailable, and (2) the faxes were sent to a list of numbers generated by a third-party fax advertiser without regard to the existence of an EBR or consent.

### a. Defendants' agency-related defenses do not create individualized questions.

The Defendants in this case have pointed the finger at each other. MetLife claims that Storick—and only Storick—can be held liable because he acted "beyond the scope of employment or agency with MetLife" and that MetLife has not "ratified" his conduct. (MetLife Answer, Doc. No. 69, Aff. Def. No. 4). Storick asserts that MetLife "has sole direct statutory liability and/or has vicarious liability" since it was "aware that its agents, employee and representatives used facsimile(s) to advertise for leads or otherwise market products" and that MetLife even "reviewed" those leads. (Storick Answer, Doc. No. 85, Aff. Def. No. 6).

Plaintiff need not take a position on these claims at this time, and the Court need not rule on their merits in deciding class certification. The relevant consideration here is whether these defenses can be decided classwide. Clearly, they can. There is no basis to claim these issues must be decided class member by class member. Thus, Defendants' agency-related defenses are not an impediment to class certification; rather, they support class certification.

> **b.   Defendants' claim that it may have had an EBR with or obtained consent from some class members does not preclude class certification.**

Defendants have asserted affirmative defenses of EBR and consent. (*See* Storick Ans., Doc. No. 85, Aff. Def. Nos. 7–11; MetLife Ans., Doc. No. 69, Aff. Def. Nos. 5-7). Defendants will likely argue that these defenses preclude class certification because the Court will have to determine at trial whether each individual class member had a pre-existing EBR with MetLife or consented to receiving faxes. This argument fails for two main reasons.

First, Defendants will not be able to assert an EBR or consent defense as to any class member at trial because the faxes plainly do not contain the opt-out language required by the TCPA, 47 U.S.C. § 227(b)(2)(D), and its implementing regulations, 47 C.F.R. § 64.1200(a)(4)(iii). The closest thing Defendants can point to for an opt-out notice is the statement on each of the 35,960 faxes that "To unsubscribe, please <u>FAX</u> your request to Our <u>PAPERLESS</u> Fax Computer: 206-350-3403." (Biggerstaff Report, Ex. 2). This language fails to meet several of the opt-out-notice requirements. First, it does not state that a sender's failure to comply with an opt-out request within 30 days is unlawful. Second, it does not state that an opt-out request must (1) identify the fax number opting out, (2) be sent to the sender's fax or phone number, and (3) that the person requesting the opt-out not subsequently provide express permission or invitation. Third, it does not include *both* "a domestic contact telephone" *and* "facsimile machine number." Fourth, it does not provide "a cost-

free mechanism" to send the opt-out request, such as a toll-free phone or fax number, a website, or an email address. 47 C.F.R. § 64.1200(a)(4)(iii)(B)&(D).

Because the faxes do not contain compliant opt-out notices, Defendants cannot raise an EBR or consent-based defense. *Ira Holtzman, C.P.A. v. Turza,* 728 F.3d 682, 683 (7th Cir. 2013) ("Turza's faxes did not contain opt-out information, so if they are properly understood as advertising then they violate the Act whether or not the recipients were among Turza's clients."); *Nack v. Walburg,* 715 F.3d 680, 685 (8th Cir. May 21, 2013) (EBR and consent are not a defense to where faxes contained improper opt-out language); *Bais Yaakov of Spring Valley v. Alloy, Inc.,* 936 F. Supp. 2d 272, 285–87 (S.D.N.Y. 2013) (same); *Vandervort v. Balboa Capital Corp.,* 287 F.R.D. 554 (C.D. Cal. 2012) (same).

Another court in this district reached the same conclusion in *A Aventura Chiropractic v. Med Waste Mgmt., LLC,* No. 12-21695-CIV, 2013 WL 3463489, at *4 (S.D. Fla. July 3, 2013). Because the faxes in that case failed to include compliant opt-out notice, the court chose to define the class as "[a]ll persons who were sent" the fax at issue, excluding from the definition any mention of lack of EBR or consent, since those defenses were not available to the defendants anyway. *Id.* ("With consent and application of the EBR Safe Harbor being eliminated as criteria that serve to define (and defeat) the class, the singular issue of the absence of the correct opt-out language does not portent individual trials or individualized inquiries."). If the Court chooses to follow the same course here, it should choose one of Plaintiff's alternative class definitions, consisting of those persons in Missouri who were sent the faxes, without any mention of EBR or consent.

Second, even if Defendants could maintain an EBR or consent defense, their claims are based on pure speculation. These are affirmative defenses that Defendants bear the burden of proving; it is not Plaintiff's burden to *disprove* them. *See In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 & the Junk Fax Prevention Act of 2006,* 21 F.C.C.R. 3787, 3793, 3812

(Apr. 6, 2006) ("To ensure that the EBR exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR."); *see also Connelly v. Hilton Grant Vacations Co., LLC*, No. 12-cv-599, 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012) ("Whether plaintiffs gave the required prior express consent is an affirmative defense to be raised and proved by a TCPA defendant . . . and is not an element of plaintiffs' TCPA claim."). In light of that burden, courts have refused to deny class certification on the basis of claimed individualized EBR or consent issues where the faxes were sent to a third-party list. *See, e.g.*, *Hinman v. M&M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) (certifying TCPA class and holding faxes sent to "leads" list generated by third-party did not present individualized issues of consent); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 143 (N.D. Ill. 2009) (rejecting individualized-consent argument where defendants "were not involved in the collection of the fax numbers" but hired a third party to do so). The court in *Cy's Crabhouse* reasoned that the TCPA regulations require a sender to "take reasonable steps to verify that the recipient agreed to make the number available for public distribution" in order to claim consent. 259 F.R.D. at 143 (citing 47 C.F.R. § 64.1200(a)(3)(B)). Defendants have offered no such evidence, despite their burden to do so.

In this case, the faxes at issue were sent to a list of fax numbers generated by a third-party without regard to whether there was an EBR or consent. There is, therefore, no basis to conclude Defendants had an EBR with any class member or obtained consent before sending the faxes. To the contrary, the evidence demonstrates Defendants did *not* have an EBR or obtain consent.

Defendants attempt to defeat certification merely by hypothesizing that, given the thousands of faxes they sent, it is possible that some faxes were coincidentally sent to people who happen to have purchased MetLife insurance in the past. Such speculation is not enough to defeat class certification. *See Hinman*, 545 F. Supp. 2d at 807 ("The possibility that some of the individuals on the

list may separately have consented to the transmissions at issue is an insufficient basis for denying certification."). The Court should reject this argument on public policy grounds because it would incentivize defendants to send as many fax advertisements as possible, directly contrary to the purpose of the TCPA.

### 2.    Superiority

Finally, Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims. Certifying a class is the superior way to adjudicate claims when a "class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). In *Amchem*, the Supreme Court noted that one of the purposes underlying Rule 23(b)(3) was "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at 617 (internal citations omitted).

From the perspective of both the Court and the class members, a class action is superior to individual actions for TCPA violations because the ordinary statutory damages are only $500 and the TCPA does not allow for shifting of attorney fees. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (noting that nearly all TCPA cases are brought as class actions because the relatively low statutory damages do not justify individual suits).

### <u>CONCLUSION</u>

The proposed class meets the requirements of Rules 23(a), (b)(3), and (g). Plaintiff requests that the Court certify the class, appoint Plaintiff as the class representative, and appoint Plaintiff's attorneys as class counsel.

Dated: November 25, 2013                    Respectfully submitted,


                                            By: _____/s/ Ryan Kelly_____
                                                     Counsel for Plaintiff

Lesile M. Kroger                            Ryan M. Kelly (Florida Bar No. 90110)
LEOPOLD-LAW, P.A.                           Ross M. Good *(Pro Hac Pending)*
2925 PGA Boulevard, Suite 200               David M. Oppenheim *(Pro Hac Pending)*
Palm Beach Gardens, FL 33410                Brian J. Wanca *(Pro Hac Pending)*
Telephone: (877) 515-7955                   ANDERSON + WANCA
Facsimile: (561) 515-1401                   3701 Algonquin Road, Suite 760
                                            Rolling Meadows, IL 60008
                                            Telephone: (847) 368-1500
                                            Facsimile: (847) 368-1501

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 25, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

s/Ryan M. Kelly
Ryan M. Kelly

Ryan M. Kelly
Ross M. Good *(Pro Hac Pending)*
David M. Oppenheim *(Pro Hac Pending)*
Brian J. Wanca *(Pro Hac Pending)*
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Facsimile: 847-368-1501
bwanca@andersonwanca.com