UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80561-CIV-MIDDLEBROOKS/BRANNON

C-MART, INC., a Missouri corporation,
individually and as the representative of a
class of similarly situated persons,

      Plaintiff,

vs.

METROPOLITAN LIFE INSURANCE
COMPANY, *et al.*,

      Defendants.
_____/

## ORDER ON MOTION FOR CLASS CERTIFICATION

THIS CAUSE comes before the Court upon Plaintiff C-Mart, Inc.'s ("C-Mart") Motion for Class Certification (DE 127), filed November 25, 2013;[1] Defendant Metropolitan Life Insurance Company's ("MetLife") Motion to Deny Class Certification (DE 114),[2] filed on November 21, 2013; and MetLife's Motion for Oral Argument on Class Certification Motions (DE 171), filed on December 12, 2013.[3] I have reviewed the record in the instant matter, and I am otherwise fully advised in the premises.

---

[1] Defendants Storick Group Co., Scott R. Storick, and Storick Group Corporation (collectively, "Storick") filed a Response in Opposition (DE 156) on December 9, 2013. C-Mart filed its Reply (DE 193) on December 23, 2013. Defendant MetLife filed its Response in Opposition (DE 170) on December 12, 2013. C-Mart filed its Reply to MetLife (DE 194) on December 23, 2013.

[2] Storick filed its Response in Support and Notice of Adoption (DE 118) on November 25, 2013. MetLife filed its Response to Storick (DE 148) on December 5, 2013. C-Mart filed its Response in Opposition (DE 211) on January 16, 2013.

[3] The Court finds that oral arguments are not warranted to determine the Parties motions. Therefore, MetLife's Motion for Oral Argument on Class Certification Motions (DE 171) is denied.

1

## I. Background

C-Mart, a Missouri corporation, filed its Complaint (DE 1) on January 10, 2013, individually and on behalf of a putative class, against MetLife, a New York corporation that sells life insurance policies, Storick Group Co., a Florida corporation, Storick Group Corporation, a North Carolina corporation, and Scott R. Storick, an officer, director, and shareholder of the Storick Group Co. and Storick Group Corporation (collectively, "Defendants").[4]

Plaintiff's one count Class Action Complaint alleges the Defendants violated the federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 USC § 227, *et seq.* ("TCPA"). C-Mart argues that MetLife hired Storick to sell life insurance. In the process of reaching out to potential customers, C-Mart alleges, Storick sent unsolicited identical advertisements via fax to approximately 35,690 Missouri residents between August 7, 2012 and September 6, 2012. C-Mart received one of those unsolicited faxes. (*See* DE 1-1).

After obtaining a computer hard drive with fax records and call-detail records from the provider that was used to transmit the faxes, C-Mart alleges that its expert, Robert Biggerstaff, was able to identify approximately 35,690 distinct Missouri fax transmissions with the same fax image as the one C-Mart received.

In the instant Motion, C-Mart seeks to certify a Rule 23 damages class as follows:

> All persons in Missouri who were sent a facsimile during the period of August 7, 2012, through September 6, 2012, stating, "LOW COST LIFE INSURANCE RATES!," "FOR A FREE QUOTE PLEASE FAX THIS FORM TO: (713) 554-

---

[4] C-Mart originally filed its Complaint in the United States District Court for the Eastern District of Missouri. The instant matter was transferred to pursuant to 28 U.S.C. § 1404(a) on May 31, 2013. (DE 45). While the proposed class members will be Missouri residents, as will be discussed below, the conduct that gave rise to the TCPA claim arose in Florida; the development of the list of numbers and offending fax advertisements all occurred in Florida. (*See* DE 45).

2

9683," and "To unsubscribe, please FAX your request to Our PAPERLESS Fax Computer: 206-350-3403."

(DE 127 at 2).[5]

## II. Class Certification Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 99 S. Ct. 2545 (1979)). "A party seeking class certification must affirmatively demonstrate compliance with [Federal Rule of Civil Procedure 23][,]" *id.* at 2551, and "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citations and internal quotation marks omitted). "Although the trial court should not determine the merits of plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d

---

[5] C-Mart provided alternative definitions of the class as:

(1) All persons in Missouri who (1) during the period of August 7, 2012, through September 6, 2012, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendants, (3) from whom Defendants did not obtain prior express permission or invitation to send those faxes, (4) with whom Defendants did not have an established business relationship, and (5) which did not display a proper opt-out notice; or

(2) All persons in area code 314, 417, 573, 636, 660, and 816 who were sent a facsimile during the period of August 7, 2012, through September 6, 2012, stating, "LOW COST LIFE INSURANCE RATES!," "FOR A FREE QUOTE PLEASE FAX THIS FORM TO: (713) 554-9683," and "To unsubscribe, please FAX your request to Our PAPERLESS Fax Computer: 206-350-3403."

(DE 127 at 2). I find that these two alternative definitions do not define the class as adequately under the TCPA as the aforementioned definition. In addition, although the Complaint asserts a nationwide class, C-Mart noted that the class definition might be modified upon after discovery.

1181, 1188 n.15 (11th Cir. 2003). Thus, a district court may "probe behind the pleadings before coming to rest on the certification question[,]"[6] as "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 131 S. Ct. at 2551; *accord Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 & n.12 (1978) ("The class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.' . . . '[T]he more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.'") (internal citations omitted).

"For a district court to certify a class action, the named plaintiffs must have standing, and the putative class must meet each of the requirements specified in [Rule 23(a)], as well as at least one of the requirements set forth in Rule 23(b)." *Vega*, 564 F.3d at 1265. In addition, "[a] plaintiff seeking certification of a claim for class treatment must propose an adequately defined class that satisfies the requirements of Rule 23." *Abby v. Paige*, 282 F.R.D. 576, 578 (S.D. Fla. 2012) (citing *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 667 (S.D. Fla. 2009)). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co.*, 350 F.3d at 1187.

Under Rule 23(a), a putative class may only be certified if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

---

[6] *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982).

As to Rule 23(a)(1)'s numerosity requirement, the Eleventh Circuit "has [] made it abundantly clear that the burden to satisfy numerosity is on the plaintiff seeking to certify a class, and a plaintiff is not permitted to make a purely speculative showing that numerosity has been met." *Abby*, 282 F.R.D. at 578 (citing *Kelecseny*, 262 F.R.D. at 669); *see also Vega*, 564 F.3d at 1266-67. "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). The Rule 23(a)(3) typicality requirement is similar to the commonality requirement but distinguishable because, "[a]lthough typicality and commonality may be related," the two concepts have been distinguished in that "[t]raditionally commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Vega*, 564 F.3d at 1275 (quoting *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1146 (11th Cir. 2001)). Further, Rule 23(a)(4) mandates that the named plaintiff must prove that (1) no conflict of interest exists between her and the putative class members and that (2) the action will be vigorously prosecuted. *See Sonsa v. Iowa*, 419 U.S. 393, 403 (1975).

If the threshold issue of Rule 23(a) has been resolved, courts must then determine whether the proposed certification of a class satisfies the requirements of Rule 23(b). *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Here, the plaintiff only seeks certification under Rule 23(b)(3). The party seeking certification of a class under that provision must demonstrate that common questions predominate over individual interests and that a class action is the superior means of adjudicating such a controversy. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class

5

member's underlying cause of action." *Klay v. Humana Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004). Superiority is determined where the moving party can demonstrate "increased efficiency" through the class mechanism. *Jackson v. Motel 6 Multipurpose Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997). In determining whether the requirements of Rule 23(b)(3) have been satisfied, courts also look to:

>   (1) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
>   (2) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
>   (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
>   (4) the likely difficulties in managing a class action.

*Vega*, 564 F.3d at 1277 (quoting FED. R. CIV. P. 23(b)). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co.*, 350 F.3d at 1187.

Defendants argue that class certification should be denied for several reasons. They contend that C-Mart lacks standing to sue under the TCPA. Furthermore, they argue that C-Mart's proposed class is not sufficiently ascertainable or numerous to warrant certification, that commonality is lacking among the class members' claims, that C-Mart and its counsel would inadequately represent the class, that individual issues predominate over any questions common to the class, and that the class action device would be an inferior method of adjudicating this dispute. C-Mart argues that it has satisfied each of the requirements for class certification.

### III. Standing

As a threshold matter, I must determine whether C-Mart has standing to bring this suit. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987); *Prado–Steiman v. Bush*, 221 F.3d

6

1266, 1279–80 (11th Cir. 2000). A plaintiff bears the burden of establishing that it has standing. *See Koziara v. City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004) (citing to *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). To establish standing, a plaintiff must prove: (1) it suffered an "injury in fact," or an injury that is concrete and particularize and actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) it is "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012) (internal quotations omitted) (citing to *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *Focus on the Family v. Pinelias Suncoast Transit Auth.*, 344 F.3d 1263, 1272 (11th Cir. 2003) (citing *Lujan* 504 U.S. at 560-1).

Defendants argue that C-Mart has failed to show it suffered any injury because of their alleged conduct. However, C-Mart's pleadings contend that by sending the unsolicited fax Defendants violated its legally protected interest under the TCPA. As the Supreme Court has explained, an injury for standing purposes "may exist solely by virtue of statutes creating legal rights the invasion of which creates standing." *Lujan*, 504 U.S. at 578 (internal quotation and citations omitted). TCPA confers the right to be free from certain harassing and privacy-invading conduct. *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 682 (2013). When a defendant violates the TCPA, the statute authorizes an aware of damages. Here, C-Mart alleges that the unsolicited fax it received was sent by Defendants and it is seeking damages because of that violation of its privacy under TCPA. C-Mart has met its burden in showing that Defendants' conduct violated TCPA, which is sufficient to confer standing upon it.

IV. **Rule 23(a) Requirements**

    A. <u>*Class Definition*</u>

Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered. *See Kelecseny*, 262 F.R.D. at 667 (citing *O'Neill v. The Home Depot U.S.A., Inc.*, 243 F.R.D. 469, 477 (S.D. Fla. 2006)). "[A] plaintiff seeking to represent a proposed class must establish that the proposed class is adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304 (internal quotation marks and citations omitted). "[A] vague class definition portends significant manageability problems for the court." *Kelecseny*, 262 F.R.D. at 667 (quoting *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 660 (M.D. Fla. 2001)).

With the instant Motion, C-Mart asks the Court to certify the following class:

> All persons in Missouri who were sent a facsimile during the period of August 7, 2012, through September 6, 2012, stating, "LOW COST LIFE INSURANCE RATES!," "FOR A FREE QUOTE PLEASE FAX THIS FORM TO: (713) 554-9683," and "To unsubscribe, please FAX your request to Our PAPERLESS Fax Computer: 206-350-3403."

(DE 127 at 2).

Defendants contend that the class definition is overly broad and not ascertainable. By including individuals who may have provided their phone numbers voluntarily, either through an established business relationship or consent, the proposed class definition ignores their ability to employ their defense under TCPA. They argue that the issue of determining the recipient's consent must be addressed on an individual basis.

Because the fax image C-Mart and the proposed class received did not have the necessary opt-out provision, C-Mart argues that the fact that Defendants obtained the class member phone numbers through either an established business relationship or through voluntary consent is irrelevant; to do an individual inquiry to determine the source of each phone number is not necessary because the outcome would be the same: the faxes did not contain the necessary opt-

8

out notices, in violation of the TCPA. C-Mart asserts that the class will include only individuals whom Defendants sent unsolicited advertisements without the required opt-out requirement provided for in 47 U.S.C. § 227(b)(2)(D).[7] The fact that Defendants may have obtained the fax

---

[7] Under the Federal Communications Commission's regulations prescribed to implement 47 U.S.C. § 227(b)(2)(D), the fax's opt-out notice complies with the requirements only if:

> (A) The notice is clear and conspicuous and on the first page of the advertisement;
>
> (B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;
>
> (C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;
>
> (D) The notice includes—
>
>> (1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and
>>
>> (2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and
>
> (E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

47 C.F.R. § 64.1200(a)(4)(iii). Paragraph (a)(4)(v), referenced above, provides that a recipient's request to opt-out of future advertisements is compliant only if:

> (A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;
>
> (B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

9

numbers through a prior relationship with the class members or through voluntary consent does not eliminate the TCPA's opt-out notice requirement. *See A Aventura Chiropractic Center, Inc. v. Med Waste Management LLC, et al.*, 2013 WL 3463489 (S.D. Fla. Jul. 3, 2013) (granting plaintiff's Motion for Reconsideration after finding that defendants' safe harbor defense was irrelevant without a proper opt-out notice) (hereinafter, "*Aventura*"); *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013). If a Missouri resident received an unsolicited fax from the Defendants, no matter if they shared their number with the Defendants through voluntary means, Defendants' fax advertisements did not include the required opt-out language required under the TCPA.

Contrary to Defendants' contentions, no individual inquiry is necessary and their established relationship or voluntary consent defenses are unavailable where, as here, the opt-out requirement is alleged to have been violated. Furthermore, Defendants have not presented any evidence of a single advertisement containing the required opt-out notice that would allow them to present such a defense.

In addition, Defendants assert that the only individuals who should be included in the class are those who own the fax machines that received the disputed faxes. However, to define class membership as those whom Defendants sent the fax is in line with TCPA's language regarding sending faxes, and would allow a concrete way to identify Defendants' intended recipients. *See AventuraI,* 2013 WL 3463489, *5 (S.D. Fla. Jul. 3, 2013). To define the class otherwise would ignore the TCPA's emphasis on prohibiting parties from sending offending faxes.

---

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

47 C.F.R. § 64.1200(a)(4)(v).

10

Therefore, I find the proposed class ascertainable and adequately defined.

B.     *Numerosity*

In order to satisfy numerosity, C-Mart must demonstrate that "the class is so numerous that joinder of all members is impracticable." *Vega*, 564 F.3d at 1266–67 (quoting FED. R. CIV. P. 23(a)(1)). While "mere allegations of numerosity are insufficient," Rule 23(a)(1) imposes a "generally low hurdle," and "a plaintiff need not show the precise number of members in the class." *Vega*, 564 F.3d at 1267 (citations omitted). "Nevertheless, a plaintiff still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Id.* (emphasis original). Although mere numbers are not dispositive, the general rule of thumb in the Eleventh Circuit is that "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *Kuehn v. Cadle Co.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007). The Court may also consider factors such as "the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy, and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits." *See Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla .2004) (Dimitrouleas, J.); *Kuehn*, 245 F.R.D. at 548.

Through the review of of the fax records and call-detail records by Mr. Biggerstaff, its expert, obtained through discovery, C-Mart estimates that Defendants sent approximately 35,690 faxes under its class definition. This amount is large enough for the Court to presume joinder would be impracticable. Thus, C-Mart has succeeded in showing that "there are *in fact*

11

sufficiently numerous parties," *Wal-Mart*, 131 S.Ct. at 2551 (emphasis in original), and that the numerosity requirement has been satisfied.

C. *Commonality*

With regard to the commonality of the class, Plaintiff has the burden to "demonstrate that the class members have suffered the same injury." *Wal-Mart*, 131 S. Ct. at 2251 (quotations omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* Indeed, it is not just the presence of common questions that matters, but the ability of the class action device to "resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2251. To this end, the Supreme Court explained:

> What matters to class certification . . . is not the raising of common "questions" – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting *Richard A. Nagareda*, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2000)) (alteration in original).

C-Mart contends that the main common answer the class definition generates is that Defendants sent class members unsolicited advertisements without the required opt-out requirement provided for in 47 U.S.C. § 227(b)(2)(D).[8] This answer would be applicable to all

---

[8] C-Mart claims that the common legal questions presented under the TCPA include the following:

1) Whether Defendants' fax constituted an "advertisement";
2) Whether Defendants' fax advertisement contained a proper opt-out notice;
3) Whether Defendants meet the definition of "sender" for direct TCPA liability, meaning a "person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement," 47 C.F.R. § 64.1200(f)(8);
4) Whether Defendants are jointly and severally liable to the class;

12

members of the putative class. While it is not enough that class members suffered a violation of the same provisions of law to satisfy the commonality requirement, *see Wal-Mart*, 131 S.Ct. at 2251, here the legal questions that the instant matter presents will be common to all class members. Therefore, I find that commonality is satisfied.

D.  *Typicality*

"[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Cooper v. So. Co.*, 390 F.3d 695, 713 (11th Cir. 2004). With regard to this aspect of the Rule 23 analysis, the Supreme Court has "repeatedly held that a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting *Falcon*, 457 U.S. at 156).

C-Mart received a fax advertisement that it claims Defendants sent approximately 35,690 times. C-Mart asserts that the fax was unsolicited and did not have the proper opt-out notice. C-Mart has established that the course of conduct that produced its TCPA violation also produced the claims of the proposed class. There exists a sufficient nexus to satisfy the typicality requirement. *See Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012).

Defendants contend that C-Mart's claims are not typical of the class because C-Mart's representative whether its number was provided voluntarily. They believe that establishing consent would make C-Mart's claims atypical of class members who did not voluntarily share their numbers that resulted in faxes being sent. However, as described earlier, the issue of

---

5) Whether Plaintiff and other class members are entitled to statutory damages; and
6) Whether Defendants' acts were "willful" or "knowing" under the TCPA and if so whether the Court should treble the statutory damages.

(DE 127 at 12).

13

consent is irrelevant since the opt-out notice was lacking. The fax images that were sent to the class members were identical; therefore, Defendants' conduct violated TCPA through the same process as to all class members and typicality is satisfied.

E. *Adequacy*

Adequacy of representation under Rule 23(a)(4) "encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co.*, 350 F.3d at 1189. Defendants contend that C-Mart, through its corporate representative William Brooksher, is unable to adequately prosecute the instant matter and that its counsel's previous course of conduct make it an inadequate choice to represent this class' interests. Defendants' arguments are unpersuasive. Mr. Brooksher is aware of the TCPA violation, understands C-Mart's has responsibilities as a named-plaintiff in this case, and demonstrates a willingness to represent the class, which has similar claims as C-Mart. In addition, class counsel has sufficient qualifications and experience to handle this class action litigation and has been found adequate in previous TCPA proceedings. (DE 127 at 13-14). Defendant fails to show that conflict of interest exists between C-Mart, its chosen counsel, and the class members. Therefore, the adequacy requirement is satisfied.

V. **Rule 23(b)(3) Requirements**

A. *Predominance*

To satisfy the predominance requirement, the named plaintiff must establish that the issues subject to generalized proof in the class action, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof. *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Thus, predominance requires not just

the presence of common issues, but also that those common issues actually outweigh any individualized issues in the litigation. In this way, predominance is "far more demanding" than Rule 23(a)'s commonality requirement. *See Jackson*, 130 F.3d at 1005 (citation omitted). "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011). Defendants argue that C-Mart has not met its burden in establishing that class-wide questions predominate over individual questions. However, the Court disagrees. "With consent and application of the [established business relationship] Safe Harbor being eliminated as criteria that serve to define (and defeat) the class, the singular issue of the absence of the correct opt-out language does not portend individual trials or individualized inquiries." *Aventura*, 2013 WL 3463489, *4 (S.D. Fla. Jul. 3, 2013) (discussing *Nack*, 715 F.3d 680 (8th Cir. 2013). The issue of consent does not predominate over the questions common to the class. Therefore, predominance is satisfied.

B. *Superiority*

The focus of superiority analysis is on "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *See Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183-84 (11th Cir. 2010)(citation omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1358 (11th Cir. 2009). "[T]he predominance analysis has a tremendous impact on the superiority analysis for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims, both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability[.]" *Sacred Heart Health Sys.*, 601 F.3d at 1184 (internal citations and alterations

omitted). In deciding superiority, the district court must consider at least some of the factors set forth in Rule 23(b)(3), including: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." See Vega, 564 F.3d at 1278 n.19 ("a complete failure to address these factors or any other pertinent consideration when conducting a Rule 23(b)(3) inquiry is an abuse of discretion").

Defendants assert that a class action is not superior to individual trials regarding the alleged TCPA violations. As detailed above, the Court has found that questions of law and fact predominate over any individualized issues. While TCPA allows individual plaintiffs to sue a sender of unsolicited faxes, there appears to be no indication that Congress sought to eliminate class actions under the TCPA. See Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72, 94-95 (3d Cir. 2011). Further, the Court finds that the "large number of claims, along with the relatively small statutory damages, the desirability of adjudicating these claims consistently, and the probability that individual members would not have a great interest in controlling the prosecution of these claims, all indicate that [a] class action would be the superior method of adjudicating" the plaintiffs' claims under TCPA. Hicks v. Client Servs., Inc., 07-61822-CIV, 2008 WL 5479111, *10 (S.D. Fla. Dec. 11, 2008).

Although the putative class members are Missouri residents, this matter was transferred from Missouri for the convenience of the parties. The TCPA prohibits a person from using "any telephone facsimile machine, computer, or other device to **send**, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C) (emphasis added). Thus, the

alleged violation of the TCPA occurred in Florida, the state from which Storick sent the unsolicited fax. Moreover, the Court does not believe litigating it in this Court would be difficult to manage.

Further, Defendants have not provided adequate reason why damage calculations will be particularly burdensome in this case. Since the TCPA is relatively straightforward, the Court cannot see how it would become complicated. *See Manno*, 289 F.R.D. at 691-93.

Reviewing all of the superiority factors, I find that the class action vehicle is superior in the instant matter.

## VI. Conclusion

After careful consideration of the Parties briefs and the record, the Court finds that C-Mart has met its burden to satisfy the Rule 23(a) and Rule 23(b) requirements. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

1. C-Mart's Motion for Class Certification (DE 127) is **GRANTED**;

2. MetLife's Motion to Deny Class Certification (DE 114) is **DENIED AS MOOT**;

3. MetLife's Motion for Oral Argument on Class Certification Motions (DE 171) is **DENIED.**

It is further **ORDERED AND ADJUDGED** that

4. The Court **CERTIFIES** the following class under the TCPA:

> All persons in Missouri who were sent a facsimile during the period of August 7, 2012, through September 6, 2012, stating, "LOW COST LIFE INSURANCE RATES!," "FOR A FREE QUOTE PLEASE FAX THIS FORM TO: (713) 554-9683," and "To unsubscribe, please FAX your request to Our PAPERLESS Fax Computer: 206-350-3403"

17

5. The Court hereby **APPOINTS** Ryan M. Kelly of Anderson & Wanda and Theodore J. Leopold of Leopold Law as class counsel.

6. Class counsel shall submit to the Court on or before **February 24, 2014** a proposed schedule for providing the class members the requisite notice, as outlined in Federal Civil Procedure Rule 23(c)(2).

It is further **ORDERED AND ADJUDGED** that

7. The Trial set to commence during the two-week beginning February 10, 2014 and the Calendar Call set for February 5, 2014 is **VACATED**;

8. The Trial in this matter is set for the two-week trial period to commence **April 2, 2014** and Calendar Call is set for **April 7, 2014**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 4 day of February, 2014.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record