UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:13-CV-80561-MIDDLEBROOKS/BRANNON

C-MART, INC., individually and as the
representative of a class of similarly situated
persons,

      Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, STORICK GROUP CO., THE
STORICK GROUP CORPORATION.,
SCOTT R. STORICK and JOHN DOES 1-
10,

      Defendants.               /

## NOTICE OF FILING PROPOSED JURY INSTRUCTIONS AND VERDICT FORM

The undersigned parties, through their respective counsel and pursuant to the Court's

Pretrial Scheduling Order (DE 66) and subsequent Order (DE 248), respectfully submit their

attached proposed jury instructions and verdict forms.  Instructions and questions proposed by

Plaintiff, C-Mart, Inc. ("C-Mart"), to which the Defendants object are underlined.  Instructions

and questions proposed by the Defendants to which C-Mart objects are *italicized*.

/s/ Frank Zacherl
Frank Zacherl, Esq.
Florida Bar No. 0868094
fzacherl@shutts.com
Jeffrey Landau, Esq.
Florida Bar No. 863777
Daniel Stabile, Esq.
dstabile@shutts.com
Florida Bar No. 0095750
**SHUTTS & BOWEN LLP**
1500 Miami Center
201 S. Biscayne Boulevard
Miami, Florida 33131
(305) 347-7305 Telephone
(305) 347-7307 Facsimile

and

Becca Wahlquist, Esq. (*pro hac vice*)
**MANATT, PHELPS, & PHILLIPS LLP**
11355 W. Olympic Blvd.
Los Angeles, CA  90064
*Counsel for Defendant MetLife*

/s/ Howard Poznanski
Howard W. Poznanski
howardwpoznanski@bellsouth.net
4800 N. Federal Highway
Suite 208A
Boca Raton, FL 34431
Telephone: (561) 417-9294
Facsimile:  (561) 417-9422
*Counsel for the Storick Defendants*

/s/ Ryan Kelly
Ryan M. Kelly
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Tel: (847) 368-1500
Fax: (847) 368-1501
buslit@andersonwanca.com
rkelly@andersonwanca.com

and

Leslie Mitchell Kroeger
lkroeger@leopold-law.com
Leopold Law, P.A.
2925 PGA Boulevard
Telephone: (561) 515-1400
Facsimile:  (561) 515-1401
*Counsel for Plaintiff C-Mart*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 18, 2014, a true and correct copy of this filing was served via CM/ECF to counsel of record in this case.

s/ Daniel T. Stabile
Of Counsel

2

## PRELIMINARY INSTRUCTIONS

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply—and you must follow the law even if you disagree with it.

What is evidence:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence"—simply a chain of circumstances that likely proves a fact.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

What is not evidence:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did—unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if [he/she] thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer

the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence—this is also called "striking" evidence—and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

Credibility of witnesses:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- the witness's memory;

- the witness's manner while testifying;

- any interest the witness has in the outcome of the case;

- any bias or prejudice the witness may have;

- any other evidence that contradicts the witness's testimony;

- the reasonableness of the witness's testimony in light of all the evidence; and

- any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>:

This is a class action civil case. In a class action, a plaintiff brings the case not only on its own behalf, but also on behalf of all other persons with sufficiently similar claims. Class actions are designed to allow the courts to resolve similar claims in a single case, rather than in a large number of separate cases.

The class in this case consists of

All persons in Missouri who were sent a facsimile during the period of August 7, 2012, through September 6, 2012, stating, 'LOW COST LIFE INSURANCE RATES!,' 'FOR A FREE QUOTE PLEASE FAX THIS FORM TO: (713) 554-9683,' and 'To unsubscribe, please FAX your request to Our PAPERLESS Fax Computer: 206-350-3403.'

You will be shown a reproduction of the alleged facsimile during the trial.

To help you follow the evidence, I'll summarize the parties' positions. The Plaintiff, C-Mart, Inc., claims that on September 4, 2012, the Defendants, Metropolitan Life Insurance Company, also known as "MetLife," and Defendants Storick Group Co., The Storick Group Corporation., and Scott R. Storick (collectively referenced as "Storick" or the "Storick Defendants" unless otherwise

specified), sent the Plaintiff an unsolicited facsimile advertisement within the scope of the class. The Defendants deny those allegations.

*MetLife contends that it did not send any unsolicited facsimile advertisement. Rather, to the extent any unsolicited facsimile advertisement was sent, it was sent by Robert Martino, who Mr. Storick contracted on his own behalf without MetLife's knowledge or authority and in violation of MetLife's policies and procedures.*

*The Storick Defendants contend, first and foremost, that the alleged facsimile was not an advertisement in violation of the law.  In connection with any contract entered into with Robert Martino, it was also specifically represented, verbally and in writing, that the sending of any facsimile was lawful and in not in violation of law.  Nonetheless, inasmuch as Mr. Martino controlled all facets of the arrangement, the Storick Defendants contend, secondly, that there is no evidence that they sent any facsimile or, if any facsimile was sent, that anything was sent on their behalf .  Mr. Martino controlled the transmission of the facsimile, as well as the return of the facsimile and, he alone, would decide whether the facsimile would be provided or not.*

<u>Burden of proof</u>:

*Plaintiff has the burden of proving its case by what the law calls a "preponderance of the evidence." That means Plaintiff must prove that, in light of*

*all the evidence, what it claims is more likely true than not. So, if you could put the evidence favoring Plaintiff and the evidence favoring each Defendant on opposite sides of balancing scales, Plaintiff needs to make the scales tip to its side. If Plaintiff fails to meet this burden with respect to a Defendant, you must find in favor of that Defendant.*

*To decide whether any fact has been proved by a preponderance of the evidence, you may—unless I instruct you otherwise—consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.*

*On certain issues, called "affirmative defenses," a Defendant has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts a Defendant must prove for any affirmative defense applicable to that Defendant. After considering all the evidence, if you decide that the Defendant has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.*

<u>Conduct of the jury:</u>

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them

information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything—all the evidence, the lawyers' closing arguments, and my instructions on the law—before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, and the Internet, including social networking websites such as Facebook, MySpace, and Twitter.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you

acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair—no one else is so qualified.

Taking notes:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

Course of the trial:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Plaintiff will present its witnesses and ask them questions. After Plaintiff questions the witness, the Defendants may ask the witness questions—this is called "cross-examining" the witness. Then Defendants will present their witnesses, and Plaintiff may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.  You'll then go to the jury room to deliberate.  During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules.

Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

- First, you must submit all questions in writing. Please don't ask any questions aloud.

- Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

- Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.  Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation.  You must treat these facts as proved for this case.

<u>Authority</u>:   Eleventh Circuit Pattern Jury Instructions (2013) 1.1 (General
Preliminary Instruction), 1.4 (Jury Questions), 2.1 (Stipulations)


Approved: _____
Not Approved: _____

## <u>USE OF DEPOSITIONS</u>

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of [name of witness], taken on [date], [is about to be/has been] presented to you [by a video/by reading the transcript]. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

<u>Authority</u>:    Eleventh Circuit Pattern Jury Instructions (2013) 2.2

Approved: _____
Not Approved: _____

## <u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.


<u>Authority</u>:    Eleventh Circuit Pattern Jury Instructions (2013) 3.1

Approved: _____
Not Approved: _____

## THE DUTY TO FOLLOW INSTRUCTIONS –
## CORPORATE PARTY INVOLVED

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

Authority:   Eleventh Circuit Pattern Jury Instructions (2013) 3.2.2

Approved: _____
Not Approved: _____

16

## <u>CONSIDERATION OF DIRECT AND CIRCUMSTANTIAL EVIDENCE;</u>
## <u>ARGUMENT OF COUNSEL; COMMENTS BY THE COURT</u>

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

<u>Authority</u>:   Eleventh Circuit Pattern Jury Instructions (2013) 3.3

Approved: _____
Not Approved: _____

17

## CREDIBILITY OF WITNESSES

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

- Did the witness impress you as one who was telling the truth?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome of the case?

- Did the witness seem to have a good memory?

- Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

- Did the witness appear to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from other testimony or other evidence?

Authority:  Eleventh Circuit Pattern Jury Instructions (2013) 3.4

Approved: _____
Not Approved: _____

# IMPEACHMENT OF WITNESSES BECAUSE OF INCONSISTENT STATEMENTS OR FELONY CONVICTIONS

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

Authority:  Eleventh Circuit Pattern Jury Instructions (2013) 3.5.1

Approved: _____
Not Approved: _____

## **EXPERT WITNESS**

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.


Authority:  Eleventh Circuit Pattern Jury Instructions (2013) 3.6.2

Approved: _____
Not Approved: _____

## RESPONSIBILITY FOR PROOF

In this case it is the responsibility of the Plaintiff to prove every essential part of its claim against each Defendant by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiff's [and class members] claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff [and class members].

You must consider each claim against each Defendant separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiff's claim against a Defendant by a preponderance of the evidence, you should find for the Defendant as to that claim.

Authority:  Eleventh Circuit Pattern Jury Instructions (2013) 3.7.1

Approved: _____
Not Approved: _____

## THE LIABILITY OF METLIFE UNDER THE TCPA[1]

In this case, C-Mart claims that MetLife is directly liable for facsimile transmissions allegedly sent to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012. MetLife denies C-Mart's claim and asserts that the transmissions, if they were sent to C-Mart and the class members at all, were sent by Robert Martino and/or Scott Storick, in violation of MetLife's policies and procedures and without MetLife's knowledge or consent. To succeed on its claim, C-Mart must prove by a preponderance of evidence:

*First*: That MetLife actually sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012;

*Second*: That these transmissions are MetLife "advertisements";

*Third*: That C-Mart and the 35,690 class members received the transmissions;

*Fourth*: That C-Mart and 35,690 class members did not give prior consent to receive the transmissions;

*Fifth*: That the sender of the transmissions did not obtain the numbers (a) through an established business relationship with the recipient or (b) from a

---

[1]  MetLife objects to the inclusion of any theory of direct liability and is moving to exclude the same. Without waiver, this instruction is submitted in case Plaintiff is permitted to pursue direct liability at trial.

*directory, advertisement, or site on the Internet to which the recipient agreed to make available its number;*

*Sixth:  That C-Mart and the 35,690 class members were actually damaged by the sending of the transmissions in question.*

*For you to find that MetLife actually sent the facsimile transmissions, C-Mart must prove by a preponderance of the evidence that MetLife (rather than Mr. Storick, Robert Martino, or some other individual or entity) physically sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012.*

*For you to find that the facsimile transmissions are "advertisements," C-Mart must prove by a preponderance of the evidence that the facsimile transmission advertised the commercial availability or quality of property, good or service of MetLife, rather than providing information or advertising for some other individual or entity.*

*For you to find that C-Mart and the 35,690 class members received the transmissions, C-Mart must prove by a preponderance of evidence that (a) C-Mart and the class members owned or issued payments for the facsimile machine that received the transmission and (b) C-Mart and the class members had knowledge of receiving the facsimile transmission.*

Authority:  In order to find direct liability under the TCPA, the defendant must send the facsimile transmission. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No.

12-80178, 2013 WL 5972173, *6 (S.D. Fla. Oct. 22, 2013) ("In the fax transmission context . . . a party is not directly liable for a TCPA violation unless it actually transmits a fax . . . ."); In *re Joint Petition filed by Dish Network LLC*, 28 FCC Rcd. 6574, 6582 (2013) ("[A] seller is not directly liable for a violation of the TCPA unless it initiates a call . . . . We conclude that a parson or entity 'initiates' a telephone call when it takes the steps necessary *to physically place a telephone call . . . .*")

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services."  47 U.S.C. 227(a)(5).  *Phillip Long Dang, D.C., P.C. v. XLHealth Corporation*, 2011 WL 553826, *3-4 (N.D. GA February 7, 2011) ("This Court is to determine whether the purpose of the communication was to promote a good or service or, in contrast, was informational.").

The transmission must be received by the plaintiff and the plaintiff must own the facsimile machine that received the transmission.  *All American Painting, LLC v. Fin. Solutions & Assocs*., 315 S.W.3d 719 (Mo. 2010) (plaintiffs who owned the machines and computers on which advertisements were received "were the parties damaged by *receipt* of the unsolicited advertisements" and thus "had standing to sue under the TCPA") (emphasis added).

Plaintiffs must show the absence of prior invitation or permission to send the transmission.  *Hinman v. M & M Rental Ctr., Inc*., 596 F. Supp. 2d 1152, 1158 (N.D. Ill. 2009) ("[T]o prevail under the TCPA, plaintiffs must show that . . . (3) plaintiffs did not give prior express invitation or permission for defendant to send the faxes."); *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 745 (N.D. Ill. 2007) ("To prevail under [the TCPA] a plaintiff must show that . . . (2) the facsimile was unsolicited"); *Foreman v. Data Transfer*, 164 F.R.D. 400, 404 (E.D. Pa.  995) ("Under the language of the statute, however, liability arises only if a transmitted advertisement is unsolicited. … Thus, the essential question of fact that *each potential plaintiff* must prove is whether a specific transmission to its machine was without express invitation or permission on its part.") (emphasis added).

The sender must not have obtained the number (a) through an established business relationship with C-Mart or (b) from a directory, advertisement, or site on the Internet to which C-Mart agreed to make available its number. 47 U.S.C. 227(b)(1)(C)(ii).

The Plaintiff must be damaged as a result of the transmission. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 12-80178, 2013 WL 5972173, *11-13 (S.D. Fla. Oct. 22, 2013) (explaining that a TCPA plaintiff must suffer an injury satisfactory of constitutional standing).


Approved: _____
Not Approved: _____

## THE LIABILITY OF SCOTT R. STORICK UNDER THE TCPA[2]

In this case, C-Mart claims that Defendant, Scott R. Storick, is directly liable for facsimile transmissions allegedly sent to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012.  Scott R. Storick denies C-Mart's claim. To succeed on its claim, C-Mart must prove by a preponderance of evidence:

*First*:  That Scott R. Storick actually sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012;

*Second*:  That these transmissions are "advertisements";

*Third*:   That C-Mart and the 35,690 class members received the transmissions;

*Fourth*:  That C-Mart and 35,690 class members did not give prior consent to receive the transmissions;

*Fifth*:  That the sender of the transmissions did not obtain the numbers (a) through an established business relationship with the recipient or (b) from a directory, advertisement, or site on the Internet to which the recipient agreed to make available its number;

---

[2]  Storick Group Co. and The Storick Group Corporation object to the inclusion of any theory of direct liability and is moving to exclude the same.  Without waiver, this instruction is submitted in case Plaintiff is permitted to pursue direct liability at trial.

*Sixth*:  That C-Mart and the 35,690 class members were actually damaged by the sending of the transmissions in question.

For you to find that Defendant, Scott R. Storick, actually sent the facsimile transmissions, C-Mart must prove by a preponderance of the evidence that Scott R. Storick physically sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012.

For you to find that the facsimile transmissions are "advertisements," C-Mart must prove by a preponderance of the evidence that the facsimile transmission advertised the commercial availability or quality of property, good or services, rather than providing information or advertising for some other individual or entity.

For you to find that C-Mart and the 35,690 class members received the transmissions, C-Mart must prove by a preponderance of evidence that (a) C-Mart and the class members owned or issued payments for the facsimile machine that received the transmission and (b) C-Mart and the class members had knowledge of receiving the facsimile transmission.

Authority:  In order to find direct liability under the TCPA, the defendant must send the facsimile transmission.  *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 12-80178, 2013 WL 5972173, *6 (S.D. Fla. Oct. 22, 2013) ("In the fax transmission context . . . a party is not directly liable for a TCPA violation unless it actually transmits a fax . . . ."); In *re Joint Petition filed by Dish Network LLC*, 28 FCC Rcd. 6574, 6582 (2013) ("[A] seller is not directly liable for a violation of the TCPA unless it initiates a call . . . . We conclude that a parson or entity 'initiates' a

telephone call when it takes the steps necessary *to physically place a telephone call . . . .*")

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 U.S.C. 227(a)(5). *Phillip Long Dang, D.C., P.C. v. XLHealth Corporation*, 2011 WL 553826, *3-4 (N.D. GA February 7, 2011) ("This Court is to determine whether the purpose of the communication was to promote a good or service or, in contrast, was informational.").

The transmission must be received by the plaintiff and the plaintiff must own the facsimile machine that received the transmission. *All American Painting, LLC v. Fin. Solutions & Assocs.*, 315 S.W.3d 719 (Mo. 2010) (plaintiffs who owned the machines and computers on which advertisements were received "were the parties damaged by *receipt* of the unsolicited advertisements" and thus "had standing to sue under the TCPA") (emphasis added).

Plaintiffs must show the absence of prior invitation or permission to send the transmission. *Hinman v. M & M Rental Ctr., Inc.*, 596 F. Supp. 2d 1152, 1158 (N.D. Ill. 2009) ("[T]o prevail under the TCPA, plaintiffs must show that . . . (3) plaintiffs did not give prior express invitation or permission for defendant to send the faxes."); *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 745 (N.D. Ill. 2007) ("To prevail under [the TCPA] a plaintiff must show that . . . (2) the facsimile was unsolicited"); *Foreman v. Data Transfer,* 164 F.R.D. 400, 404 (E.D. Pa. 995) ("Under the language of the statute, however, liability arises only if a transmitted advertisement is unsolicited. … Thus, the essential question of fact that *each potential plaintiff* must prove is whether a specific transmission to its machine was without express invitation or permission on its part.") (emphasis added).

The sender must not have obtained the number (a) through an established business relationship with C-Mart or (b) from a directory, advertisement, or site on the Internet to which C-Mart agreed to make available its number. 47 U.S.C. 227(b)(1)(C)(ii).

The Plaintiff must be damaged as a result of the transmission. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 12-80178, 2013 WL 5972173, *11-13 (S.D. Fla. Oct. 22, 2013) (explaining that a TCPA plaintiff must suffer an injury satisfactory of constitutional standing).

Approved: _____
Not Approved: _____

## THE LIABILITY OF STORICK GROUP CO. and THE STORICK GROUP CORPORATION  UNDER THE TCPA[3]

In this case, C-Mart claims that Defendants, Storick Group Co. and The Storick Group Corporation ("Storick Corporate Defendants"), are directly liable for facsimile transmissions allegedly sent to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012.  The Storick Corporate Defendants deny C-Mart's claim. To succeed on its claim, C-Mart must prove by a preponderance of evidence:

First:  That the Storick Corporate Defendants actually sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012;

Second:  That these transmissions are "advertisements";

Third:  That C-Mart and the 35,690 class members received the transmissions;

Fourth:  That C-Mart and 35,690 class members did not give prior consent to receive the transmissions;

Fifth:  That the sender of the transmissions did not obtain the numbers (a) through an established business relationship with the recipient or (b) from a

---

[3]  Storick Group Co. and The Storick Group Corporation object to the inclusion of any theory of direct liability and is moving to exclude the same.  Without waiver, this instruction is submitted in case Plaintiff is permitted to pursue direct liability at trial.

directory, advertisement, or site on the Internet to which the recipient agreed to make available its number;

Sixth:  That C-Mart and the 35,690 class members were actually damaged by the sending of the transmissions in question.

For you to find that the Storick Corporate Defendants actually sent the facsimile transmissions, C-Mart must prove by a preponderance of the evidence that the Storick Corporate Defendants physically sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012.

For you to find that the facsimile transmissions are "advertisements," C-Mart must prove by a preponderance of the evidence that the facsimile transmission advertised the commercial availability or quality of property, good or services, rather than providing information or advertising for some other individual or entity.

For you to find that C-Mart and the 35,690 class members received the transmissions, C-Mart must prove by a preponderance of evidence that (a) C-Mart and the class members owned or issued payments for the facsimile machine that received the transmission and (b) C-Mart and the class members had knowledge of receiving the facsimile transmission.

<u>Authority</u>:  In order to find direct liability under the TCPA, the defendant must send the facsimile transmission.  *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 12-80178, 2013 WL 5972173, *6 (S.D. Fla. Oct. 22, 2013) ("In the fax transmission context . . . a party is not directly liable for a TCPA violation unless it actually transmits a fax . . . ."); In *re Joint Petition filed by Dish Network LLC*, 28 FCC Rcd. 6574, 6582 (2013) ("[A] seller is not directly liable for a violation of the TCPA unless it initiates a call . . . . We conclude that a parson or entity 'initiates' a telephone call when it takes the steps necessary *to physically place a telephone call* . . . .")

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services."  47 U.S.C. 227(a)(5).  *Phillip Long Dang, D.C., P.C. v. XLHealth Corporation*, 2011 WL 553826, *3-4 (N.D. GA February 7, 2011) ("This Court is to determine whether the purpose of the communication was to promote a good or service or, in contrast, was informational.").

The transmission must be received by the plaintiff and the plaintiff must own the facsimile machine that received the transmission.  *All American Painting, LLC v. Fin. Solutions & Assocs*., 315 S.W.3d 719 (Mo. 2010) (plaintiffs who owned the machines and computers on which advertisements were received "were the parties damaged by *receipt* of the unsolicited advertisements" and thus "had standing to sue under the TCPA") (emphasis added).

Plaintiffs must show the absence of prior invitation or permission to send the transmission.  *Hinman v. M & M Rental Ctr., Inc*., 596 F. Supp. 2d 1152, 1158 (N.D. Ill. 2009) ("[T]o prevail under the TCPA, plaintiffs must show that . . . (3) plaintiffs did not give prior express invitation or permission for defendant to send the faxes."); *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 745 (N.D. Ill. 2007) ("To prevail under [the TCPA] a plaintiff must show that . . . (2) the facsimile was unsolicited"); *Foreman v. Data Transfer,* 164 F.R.D. 400, 404 (E.D. Pa.  995) ("Under the language of the statute, however, liability arises only if a transmitted advertisement is unsolicited. … Thus, the essential question of fact that *each potential plaintiff* must prove is whether a specific transmission to its machine was without express invitation or permission on its part.") (emphasis added).

The sender must not have obtained the number (a) through an established business relationship with C-Mart or (b) from a directory, advertisement, or site on the

Internet to which C-Mart agreed to make available its number. 47 U.S.C. 227(b)(1)(C)(ii).

The Plaintiff must be damaged as a result of the transmission. *Palm Beach Golf Center-Boca, Inc. v. Sarris*, No. 12-80178, 2013 WL 5972173, *11-13 (S.D. Fla. Oct. 22, 2013) (explaining that a TCPA plaintiff must suffer an injury satisfactory of constitutional standing).

Approved: _____
Not Approved: _____

## TCPA Claim – General

C-Mart and the Class members claim that Defendants violated the Federal Telephone Consumer Protection Act, or the "TCPA."   The TCPA makes it unlawful for "any person within the United States ... to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

The Court has already determined that the faxes are advertisements as defined by the TCPA.

The entity or entities on whose behalf facsimiles are sent are liable for compliance with the rule.

So, to succeed on its claim, Plaintiff must prove by a preponderance of the evidence that one or more of the Defendants is a "sender" of the fax.

The term "sender" is defined as "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement."

Source: TCPA, 47 U.S.C. § 227(b)(1)(C); *In re: Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 F.C.C.R. 12391, 12407, 1995 WL 464817, ¶¶ 34, 35 (Aug. 7, 1995); 47 U.S.C. § 227(a)(5); 47 U.S.C. § 227(b)(2); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012); 47 C.F.R. § 64.1200(f)(1); 47 C.F.R. § 64.1200(f)(8).

Approved: _____
Not Approved: _____

## **TCPA – Strict Liability**

The TCPA is in essence a strict liability statute.  Strict liability means negligence as a matter of law or negligence per se.  The effect of strict liability is to remove the burden from the Plaintiff of proving specific acts of conduct on the part of Defendants. A Defendant may not avoid liability under the TCPA solely on the basis that the transaction was executed by an independent contractor.

The term "per se" means of in or by itself; standing alone, without reference to additional facts.

Source:  *Alea London Ltd. v. Am. Home Servs*., 638 F.3d 768, 776 (11th Cir. 2011); *Cotterill v. O.F. Mossberg & Sons, Inc.,* 2009 WL 377169, *7 (M.D. Fla. Feb. 12, 2009); *In re Engle Cases,* 2012 WL 4771237, *2 (M.D. Fla. Oct. 5, 2012); *Glenn Ellyn Pharmacy v. Promius Pharma, LLC*, 2009 WL 2873046 (N.D. Ill. Sept. 11, 2009); *U.S. v. Talley*, 431 F.3d 784, 786 (11th 2005); *Environmental Progress v. MetLife*, 12-CV-80907 (April 1, 2013)(Doc. 117); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 10 C.F.R. 12391, 12407 (Aug. 7, 1995) ("[T]he entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements.")

Approved: _____
Not Approved: _____

## <u>TCPA – Joint and Several Liability</u>

<u>The TCPA is a joint and several liability statute.  Where parties are jointly and severally liable it means that each party is fully liable.</u>

Source: *Environmental Progress v. MetLife*, 12-CV-80907 (April 1, 2013)(Doc. 117) ; *Ortho-McNeil Pharmaceutical v. Mylan Laboratories, Inc.*, 569 F.3d 1353, 1357 (Fed. Cir. 2009)

Approved: _____
Not Approved: _____

# AFFIRMATIVE DEFENSES[4]

In this case, each Defendant asserts a number of affirmative defenses. Even if the Plaintiff proves its claim against a Defendant by a preponderance of the evidence, that Defendant can prevail in this case if that Defendant proves an affirmative defense by a preponderance of the evidence.

You should consider each affirmative defense separately.

I caution you that the Defendants do not have to disprove the Plaintiffs claims, but if a Defendant raises an affirmative defense, the only way that Defendant can prevail on that specific defense is if that Defendant proves the defense by a preponderance of the evidence.

Authority:  Eleventh Circuit Pattern Jury Instructions (2013) 3.7.2

Approved: _____
Not Approved: _____

---

[4]  The Defendants have raised number of affirmative defenses in their pleadings that may be deemed to be "legal" in nature, some of which are currently pending before the Court in various motions and other filings.  Without waiver of its affirmative defenses, the Defendants, individually, reserve the right to raise their affirmative defenses at trial or otherwise.  Additionally, the Defendants have raised a number of affirmative defenses in their pleading that the Defendants argue are, in fact, elements of Plaintiff's claim – *e.g.*, the existence of an established business relationship.  To the extent the Court disagrees, the Defendants, individually, reserve the right to raise these as affirmative defenses at trial.

## <u>DUTY TO DELIBERATE</u>

Of course, the fact that I have given you instructions concerning the issue of Plaintiff's damages should not be interpreted in any way as an indication that I believe that the Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

<u>Authority</u>:  Eleventh Circuit Pattern Jury Instructions (2013) 3.8.1

Approved: _____
Not Approved: _____

## ELECTION OF FOREPERSON

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible—either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

<u>Authority</u>: Eleventh Circuit Pattern Jury Instructions (2013) 3.9

Approved: _____
Not Approved: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:13-CV-80561-MIDDLEBROOKS/BRANNON

C-MART, INC., individually and as the
representative of a class of similarly situated
persons,
      Plaintiff(s),
v.
METROPOLITAN LIFE INSURANCE
COMPANY, STORICK GROUP CO., THE
STORICK GROUP CORPORATION.,
SCOTT R. STORICK and JOHN DOES 1-
10,
      Defendants.               /

## *VERDICT FORM FOR METROPOLITAN LIFE INSURANCE COMPANY*[5]

*Do you find from a preponderance of the evidence:*

*First:*    *That Metropolitan Life Insurance Company actually sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012?*

*_____ YES _____ NO*

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

*Second:*  *That this transmission is an "advertisement" for MetLife?*

*_____ YES _____ NO*

---

[5] MetLife objects to the inclusion of any theory of direct liability and is moving to exclude the same.  Without waiver, this instruction is submitted in case Plaintiff is permitted to pursue direct liability at trial.

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

<u>Third</u>:   *That C-Mart and the 35,690 class members received the transmission?*

_____ YES _____ NO

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

<u>Fourth</u>:   *That C-Mart and the 35,690 class members did not give prior consent to receiving the transmission?*

_____ YES _____ NO

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

<u>Fifth</u>:   *That the sender of the transmission did not obtain the number (a) through an established business relationship with C-Mart or (b) from a directory, advertisement, or site on the Internet to which C-Mart agreed to make available its number?*

_____ YES _____ NO

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

<u>Sixth</u>:   *That C-Mart and the 35,690 class members were actually damaged as a result?*

42

_____ *YES* _____ *NO*

*SO SAY WE ALL.*

_____

*FOREPERSON'S SIGNATURE*

*DATE:* _____

Approved: _____
Not Approved: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:13-CV-80561-MIDDLEBROOKS/BRANNON

C-MART, INC., individually and as the
representative of a class of similarly situated
persons,
       Plaintiff(s),
v.
METROPOLITAN LIFE INSURANCE
COMPANY, STORICK GROUP CO., THE
STORICK GROUP CORPORATION.,
SCOTT R. STORICK and JOHN DOES 1-
10,
       Defendants.                        /

### _VERDICT FORM FOR STORICK GROUP CO._[6]

     *Do you find from a preponderance of the evidence:*

     *First:  That the Storick Group Co. actually  sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012?*

     *_____ YES _____ NO*

     *If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

     *Second:  That this transmission is an "advertisement"?*

     *_____ YES _____ NO*

     *If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

---

[6] Storick Group Co. objects to the inclusion of any theory of direct liability and is moving to exclude the same.  Without waiver, this instruction is submitted in case Plaintiff is permitted to pursue direct liability at trial.

*Third:*   That C-Mart and the 35,690 class members received the transmission?

_____ YES _____ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Fourth:*   That C-Mart and the 35,690 class members did not give prior consent to receiving the transmission?

_____ YES _____ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Fifth:*   That the sender of the transmission did not obtain the number (a) through an established business relationship with C-Mart or (b) from a directory, advertisement, or site on the Internet to which C-Mart agreed to make available its number?

_____ YES _____ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Sixth:*   That C-Mart and the 35,690 class members were actually damaged as a result?

_____ YES _____ NO

45

*SO SAY WE ALL.*

_____
*FOREPERSON'S SIGNATURE*

*DATE:* _____

Approved: _____
Not Approved: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:13-CV-80561-MIDDLEBROOKS/BRANNON

C-MART, INC., individually and as the
representative of a class of similarly situated
persons,
      Plaintiff(s),
v.
METROPOLITAN LIFE INSURANCE
COMPANY, STORICK GROUP CO., THE
STORICK GROUP CORPORATION.,
SCOTT R. STORICK and JOHN DOES 1-
10,
      Defendants.                      /

### *VERDICT FORM FOR THE STORICK GROUP CORPORATION* [7]

*Do you find from a preponderance of the evidence:*

*First*:  *That The Storick Group Corporation actually sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012?*

*     YES       NO*

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

*Second:  That this transmission is an "advertisement"?*

*     YES       NO*

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

---

[7] The Storick Group Corporation objects to the inclusion of any theory of direct liability and is moving to exclude the same. Without waiver, this instruction is submitted in case Plaintiff is permitted to pursue direct liability at trial.

*Third*:     That C-Mart and the 35,690 class members received the transmission?

\_\_\_\_\_ YES \_\_\_\_\_ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Fourth*:     That C-Mart did not give prior consent to receiving the transmission?

\_\_\_\_\_ YES \_\_\_\_\_ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Fifth*:   That the sender of the transmission did not obtain the number (a) through an established business relationship with C-Mart or (b) from a directory, advertisement, or site on the Internet to which C-Mart agreed to make available its number?

\_\_\_\_\_ YES \_\_\_\_\_ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

_Sixth_:   That C-Mart and the 35,690 class members were damaged as a result?

\_\_\_\_\_ YES  \_\_\_\_\_ NO

SO SAY WE ALL.

_____
FOREPERSON'S SIGNATURE

DATE: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:13-CV-80561-MIDDLEBROOKS/BRANNON

C-MART, INC., individually and as the
representative of a class of similarly situated
persons,

        Plaintiff(s),

v.

METROPOLITAN LIFE INSURANCE
COMPANY, STORICK GROUP CO., THE
STORICK GROUP CORPORATION.,
SCOTT R. STORICK and JOHN DOES 1-
10,

        Defendants.                     /

## *VERDICT FORM FOR DEFENDANT SCOTT R. STORICK*

*Do you find from a preponderance of the evidence:*

*First:  That Scott R. Storick,  actually sent the facsimile transmissions to C-Mart and the 35,690 class members during the period of August 7, 2012 through September 6, 2012?*

*\_\_\_\_\_ YES  \_\_\_\_\_ NO*

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

*Second:  That this transmission is an "advertisement"?*

*\_\_\_\_\_ YES  \_\_\_\_\_ NO*

*If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.*

50

*Third:*  That C-Mart and the 35,690 class members received the transmission?

\_\_\_\_\_ YES  \_\_\_\_\_ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Fourth:*  That C-Mart and the 35,690 class members did not give prior consent to receiving the transmission?

\_\_\_\_\_ YES  \_\_\_\_\_ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Fifth:*  That the sender of the transmission did not obtain the number (a) through an established business relationship with C-Mart or (b) from a directory, advertisement, or site on the Internet to which C-Mart agreed to make available its number?

\_\_\_\_\_ YES  \_\_\_\_\_ NO

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.

*Sixth*:   That C-Mart and the 35,690 class members were damaged as a result?

_____ YES _____ NO

*SO SAY WE ALL.*

_____

*FOREPERSON'S SIGNATURE*

*DATE:* _____

<u>PLAINTIFF'S VERDICT FORM</u>

<u>We, the jury, answer the questions presented to us as follows:</u>

1. <u>During August 7, 2012 through September 6, 2012, one or more of the Defendants was the sender of 35,690 faxes to Plaintiff and the members of the Class?</u>

   Yes_____   No_____

2. <u>During August 7, 2012 through September 6, 2012, which of the following are liable for sending of 35,690 faxes to Plaintiff and the members of the Class?</u>

   MetLife _____   Yes _____   No _____

   Stock Storick _____   Yes _____   No _____

   Storick Group Co. _____   Yes _____   No _____

   The Storick Group Corp. Yes _____   No _____

   Approved: _____
   Not Approved: _____